### ELLIS et al. v. JOHNSON et al.
### No. 2529.

Court of Civil Appeals of Texas. El Paso.
April 23, 1931.

Rehearing Denied May 14, 1931.

Isaacks & Lattner, of El Paso, and R. D. Blaydes, of Ft. Stockton, for appellants.

W. B. Silliman, of Ft. Stockton, for appellees.

WALTHALL, J.

S. C. Johnson, plaintiff, brought three suits in the justice court, one each against G. W. Rose, Haskell Gowen, and R. E. Ellis. Each of the suits was tried in the justice court and severally appealed to the county court where the three suits were consolidated and tried as one suit. In each suit Johnson asked judgment against each defendant for the sum of $108.13. In the county court Johnson recovered judgment against Gowen and Ellis, but judgment was rendered in favor of Rose. Johnson appealed as to the judgment in favor of Rose. Gowen and Ellis appealed as to the judgment in favor of Johnson. The facts are substantially as follows:

In the year 1926, Johnson, Rose, Ellis, Gowen, and three others, not involved in this controversy, formed a corporation known as Upton County Light & Power Company, each of the seven holding an equal share of the stock, and the seven hold all of the stock in the corporation. In April, 1927, the corporation entered into a contract to sell all of its assets, except some accounts receivable, to the West Texas Utilities Company, for a cash consideration of $250,000, and on the last day of May or the first day of June, 1927, the contract was carried into effect, and the $250,000 was paid in cash to the Upton County Light & Power Company. The Upton County Light & Power Company owed some $58,000 besides the income tax for the year 1927, which amount of the tax, at the date of the sale, could not be either definitely computed or paid.

When the $250,000 was collected all of the indebtedness of the selling company was paid except the income tax, and the balance, amounting to $192,000 was distributed among the seven stockholders, each receiving his proportionate part. At that time it was agreed and understood among the stockholders that when the income tax had been computed each of the stockholders would pay his proportionate part of such income tax. After disposing of the assets of the corporation, except some accounts receivable, the selling company amended its charter changing its name to Borderland Utilities Company,

and operated some properties in Reeves and Brewster counties. The stock of the last-named corporation was still owned in equal shares by the same seven stockholders. Johnson was president of the corporation at all times, both before and after the charter was amended. At the close of the year 1927, a firm of auditors was employed to compute and make return of the income tax. It was computed that the income tax of the Upton County Power & Light Company, then Borderland Utilities Company, owed in income taxes something more than $16,000, as then estimated, which amount was proportionately paid by each of the seven stockholders, as per their original agreement. That was some time in March, 1928.

On September 14, 1928, the plaintiff Johnson and the other stockholders, including Ellis, Gowen, and Rose, entered into a written contract, referred to as an option contract, whereby Johnson was given a sixty days' option to purchase the stock owned by the other stockholders in the Borderland Utilities Company for an agreed consideration, the consideration recited in the option contract being as follows:

"In consideration of which the said S. C. Johnson pays each of the signers hereto Ten Dollars cash, the receipt of which is hereby acknowledged, and the further consideration that if said option of purchase is exercised within the period herein granted, said S. C. Johnson will satisfy all sellers that all personal liabilities on or account of said Borderland Utilities, as principal or surety for said Company, will be liquidated promptly, and said Johnson to then, at said time of sale, if consummated, enter into a written indemnity guaranteeing to each of the sellers signing this instrument, to hold each of them harmless as to any debts or liability, present, past or future, by virtue of having been holders and owners of said stocks, and either principal or surety or any debt, note or other obligation, bond or contract of said Borderland Utilities, or otherwise, as officers and directors thereof, and in their individual capacity for account of said Company. As a further consideration moving the sellers to sign this option, the said S. C. Johnson shall pay the said sellers the further sum of $600.00 each, which sums have heretofore been advanced said Utilities in their personal capacity, for the furtherance of the interest of said Company, and to pay to each of them any further advances that may have been or yet be advanced pending this option agreement, if any.

"The indebtedness referred to herein which is to be liquidated, is especially that held by the Central National Bank & Trust Company of San Angelo, and the First National Bank of Fort Stockton, Texas."

The option contract was consummated, and each of the defendants transferred to Johnson his stock in the Borderland Utilities Company. Johnson executed to Rose an indemnity contract against indebtedness on account of the Borderland Utilities referred to in the option contract and in practically the same language as used in the option contract, above stated, but did not give to Ellis or Gowen such indemnity contract.

After alleging substantially the above, and other matters not necessary to state, plaintiff alleged that later, about January 13, 1930, on a final adjustment of the income tax, after the payment by all parties of the $16,000, an additional amount of $756.91 of said tax was found to be due and payable; that defendants refused to pay their proportionate part of the additional income tax, and that plaintiff, as one of the stockholders of the said corporation, and as manager of its affairs, was compelled to and did pay same amounting to $108.13, for each of defendants.

Defendants answered by demurrers, general and special, general denial, denied that defendants requested plaintiff to pay said additional income tax or ratified such payment, and denied liability for same; pleaded the provision of the option contract to save them harmless, and that by reason of such provision plaintiff is estopped to assert any liability against defendants by reason of said payment.

The case was tried to the court without a jury. The court made findings of fact and entered judgment in favor of Rose, against Johnson, and in favor of Johnson against Ellis and Gowen. Johnson appeals as to the judgment in favor of Rose and Ellis, and Gowen appeals as to the judgment in favor of Johnson.

### Opinion.

The court's findings are lengthy, and we will refer to such only as such findings tend to affect the issues presented on this appeal. The court found that each of the stockholders understood that, while he was making his proportionate part of the income tax his individual liability, same would have to be reported and paid in the name of the Borderland Utilities, and each agreed to pay his part of the tax through Johnson, and that the payments made were paid through Johnson; that Johnson, out of his own funds, paid the additional tax of $756.91 on the final adjustment. The court found that in paying the additional tax Johnson was a volunteer, such payment never having been consented to or ratified by defendants; that in executing the indemnity contract between Johnson and Rose neither knew or considered that there would be an additional income tax to be paid on final adjustment, and, in the court's conclusions of law, the court concluded, in effect that Rose was relieved of the additional tax by reason of Johnson's indemnity contract to Rose.

■ There are only two questions we think to discuss. Was Johnson a volunteer in a legal sense in the payment of the additional income tax? If he was, he could not by reason of being a volunteer recover of defendants their pro rata of the tax.

We think, however, that under the facts stated, without repeating them, Johnson was not a volunteer in the payment of the additional income tax found to be due on final adjustment of said tax with the government. Johnson, under his option contract, was vitally interested in seeing that the income tax was paid. It may be that he was not required to advance the money, for defendants to pay the tax, but he was the company's president, in charge of its business affairs, and the court found that defendants had agreed to pay their part of the tax through him.

■■ The other question presented is Johnson's personal liability for the tax under his option contract. In contemplation of purchasing the shares of stock of the defendants, which he did, he agreed to the option contract to satisfy defendants that all personal liability, on account of the Borderland Utilities, would be liquidated promptly, and would, in addition, enter into a written indemnity contract guaranteeing each of defendants to hold each harmless "as to any liability, present, past or future," by reason of their having been owners of shares of stock or other character of obligation, whether as officer or director, or in their individual capacity. By exercising the option contract and buying the shares of stock of defendants, Johnson at once became liable to defendants on the option contract for whatever debts and obligations defendants were liable by reason of defendants' ownership of such shares of stock, whether as officers or directors, or in their individual capacity. The rule seems to be settled that an option becomes a contract inter partes when exercised according to its terms. C. J. vol. 13, par. 183, p. 336. The obligation assumed by Johnson, by its terms, seems to contemplate every character of liability of defendants that did arise by reason of their ownership of the shares of stock, and the unpaid additional income tax, not being excepted, would be included.

We have carefully considered other matters presented and have concluded they present no reversible error, and are overruled.

The case is affirmed as to Rose, and as to Ellis and Gowen the case is reversed and judgment rendered in their favor.

Affirmed in part, and reversed and rendered in part.

PELPHREY, C. J. (dissenting).

I cannot agree with my brethren in the holding that Johnson, by his obligation, assumed the unpaid additional income tax.

The important question in construing contracts is to determine the intention of the parties, and they should be so construed as to give effect to such intention. 31 C. J., § 18, p. 426; 14 R. C. L. § 4, p. 46, and as said in the latter authority: "Contracts of indemnity, therefore, must receive a reasonable construction so as to carry out, rather than defeat, the purpose for which they were executed. To this end they should neither, on the one hand, be so narrowly or technically interpreted as to frustrate their obvious design; nor, on the other, so loosely or inartificially as to relieve the obligor from a liability within the scope or spirit of their terms."

The trial court found: "I find that in the meeting of said stockholders at the time said $27,500 was paid to each of them, each and every one of said stockholders mutually agreed that in consideration of the $27,500 paid to him that the matter of the payment of said income tax as and when it became due and payable should not be a liability of the Upton County Light and Power Company and should not be carried on the books of said corporation as a liability, but that each and every one of said seven named stockholders accepted, as his own liability, and each individually agreed to pay his proportionate part (1/7) of said income tax as and when the same became due and payable, and that each and every one of said seven named stockholders agreed that his said proportionate part of said income tax would be his individual debt."

The writer has carefully read the evidence introduced and is of the opinion that there is evidence to support such finding.

If this be true, then is it not equally true that by that agreement the parties excluded any amount due the federal government for income tax, from Johnson's agreement to hold appellants harmless as to any debts or liability, present, past, or future, by virtue of having been holders and owners of said stocks?

It must be admitted that the language used is certainly broad enough to include the debt in question, but the writer is of the opinion that when the parties, by their own agreement, removed the income tax from the affairs of the company, and agreed that one-seventh of the amount due for such tax should be the individual debt of each stockholder, it ceased then to be a debt or liability arising by virtue of their having been stockholders in the company and was a debt arising by virtue of the agreement.

It must be conceded that the part of the income tax over which this suit was brought was not in the contemplation of the parties at the time the option was taken, and the fact that payments were made on the first assessment, after the option agreement was made, is also

indicative of the fact that this obligation was not included in the indemnity agreement.

I have reached the conclusion that the judgment as to Rose should be reversed and rendered in favor of Johnson, and, as to Ellis and Gowen, should be affirmed.